UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

January 3, 2019

LETTER TO COUNSEL

      RE:    *Judith R. v. Commissioner, Social Security Administration*;[1]
              Civil No. SAG-18-692

Dear Counsel:

      On March 8, 2018, Plaintiff Judith R. petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her request for waiver of an overpayment. [ECF 1]. I have considered the parties' cross-motions for summary judgment, and Plaintiff's Reply. [ECF 18, 23, 24]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

      Plaintiff was found disabled and began receiving disability benefits as of August 1, 1993. (Tr. 274). In 2003, Plaintiff returned to work. (Tr. 35-38). As required, she reported the information about her return to work to the SSA. (Tr. 310). Almost two years later, on June 22, 2005, the SSA sent Plaintiff a letter stating that, "it appears we will decide that your disability ended because of substantial work February 2004 [sic] and that you are not entitled to payments for: May 2004 through July 2004, September 2004 and continuing." (Tr. 39). The letter also states, "[b]ased on the information we have, your extended period of eligibility began February 2004 and will end if substantial work is performed after 36 months following this date." (Tr. 41). Finally, the letter states, "[u]sually, we find that work is substantial if gross monthly earnings average more than the following amounts (followed by a list of amounts for a given year)." (Tr. 41). The SSA sent Plaintiff a near-identical letter two weeks later, on July 7, 2005. (Tr. 50-53).

      On September 13, 2005, Plaintiff submitted an informal waiver request. (Tr. 229). Then, on September 20, 2005, the SSA sent Plaintiff a letter stating that, "[w]e received your request that we not collect the overpayment. You will receive benefits as follows until we respond to your request . . .. You will receive $557.00 for September 2005 in October 2005. After that, you will receive $557.00 on or about the third of each month." (Tr. 69). Several years later, on November 6, 2008, the SSA sent Plaintiff another letter stating,

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

> [w]e restarted your Social Security disability payments during your extended period of eligibility because you were no longer doing substantial work. However, we now have information about your work and earnings that could affect your payments. Based on this information, it appears we will decide that you are not entitled to payments for: October 2005 through June 2006, October 2006 and continuing.

(Tr. 72). On December 2, 2008, the SSA sent Plaintiff a letter stating that she owed a new overpayment of $26,792.70. (Tr. 74). Plaintiff again requested a waiver. The total amount of the overpayments the SSA ultimately sought to collect was $34,604.71. (Tr. 81-82).

Plaintiff's request to waive recovery of the overpayment was denied. (Tr. 85-87). A hearing was held on September 12, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 300-17). Following the hearing, the ALJ determined that a waiver was inappropriate because Plaintiff was at fault in causing the overpayment. (Tr. 19-21). The Appeals Council ("AC") issued a decision incorporating and adopting the ALJ's opinion, and making further findings in support of a waiver denial. (Tr. 8-10). Plaintiff appealed the final determination of the SSA. (Tr. 390). On appeal, this Court remanded the case "for further hearing and consideration of [Plaintiff's] position." (Tr. 390-93). Specifically, this Court highlighted the ALJ's failure to assess Plaintiff's credibility. (Tr. 392). The AC vacated the earlier decision and remanded the case to an ALJ for further proceedings. (Tr. 431-33). A second hearing was held on September 21, 2016. (Tr. 462-516). Following that hearing, on March 1, 2017, the ALJ issued a partially favorable decision, determining that Plaintiff was at fault for $26,692.70 of overpayment for the periods of October, 2005, through June, 2006, and October, 2006, through December, 2008, but was not at fault for $7,912.00 of overpayment for the periods of May, 2004, through July, 2004, and September, 2004 through June, 2005. (Tr. 342-47). This time, the AC denied Plaintiff's request for review, (Tr. 318-22), so the ALJ's 2017 decision constitutes the final, reviewable decision of the Agency.

This case turns on whether the ALJ provided substantial evidence to support the determination that Plaintiff was not entitled to a waiver of $26,692.70 of the overpayment. The ALJ found that Plaintiff was without fault for the periods of May, 2004, through July, 2004, and September 2004, through June, 2005, but that she was not without fault for the periods of October, 2005, through June, 2006, and October, 2006, through December, 2008. (Tr. 344-46). Accordingly, the only issue before this Court is whether Plaintiff was without fault for those latter time periods.

An overpayment is defined as "the difference between the amount paid to the beneficiary and the amount of the payment to which the beneficiary was actually entitled." 20 C.F.R. § 404.504. When an overpayment occurs, SSA will adjust any benefit payments due to an overpaid claimant, or recover the funds by, for example, requiring the claimant to refund the overpayment. *See* 42 U.S.C. § 404(a)(1)(A). No adjustment or recovery is permitted if: (1) the overpaid individual is without fault and; (2) recovery would defeat the purpose of Title II of the Act, or be "against equity and good conscience." 42 U.S.C. § 404(b)(1); *Garnett v. Sullivan*, 905 F.2d 778, 781 (4th Cir. 1990). In determining whether an individual is without fault, the Agency will consider all pertinent circumstances, including any physical, mental, educational, or linguistic limitations the individual might have. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.507.

The SSA regulations provide that what constitutes fault on the part of the overpaid individual depends upon whether the facts show that the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507. The overpaid individual bears the burden of demonstrating that she is without fault, and that repayment would be inequitable, or would defeat the purposes of the Act. *Gatewood v. Astrue*, Civil No. JKS-08-1744, 2011 WL 939027, at *2 (D. Md. Mar. 16, 2011) (citing *Valente v. Sec'y of HHS*, 733 F.2d 1037, 1042 (2d Cir. 1984); *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984)). Even when the Agency has some culpability in making the overpayment, an assessment of fault applies only to the overpaid individual. *See* 20 C.F.R. § 404.507. Thus, the fact that the SSA made overpayments and confused Plaintiff with its correspondence in this case is not dispositive as to whether there is fault on the part of Plaintiff. However, the SSA's actions are properly considered in assessing what Plaintiff "knew or could have been expected to know."

Ultimately, the ALJ supported his conclusion with substantial evidence. He concluded that Plaintiff was not without fault for accepting payments that she knew or could have been expected to know were incorrect, following receipt of the July 7, 2005 letter informing her that she was not entitled to benefits because of her "substantial work."[2] (Tr. 345-46, 350-53). His decision relied on finding that Plaintiff's beliefs regarding entitlement to benefits after that date were not credible, because "at the same time she requested a waiver of overpayments due to working above substantial gainful activity, she testified she believed she was entitled to Social Security benefits while she continued to work above substantial gainful activity." (Tr. 346). I find that the ALJ supported that credibility assessment with substantial evidence. The credibility determination "should refer specifically to the evidence informing the ALJ's conclusion." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Here, the ALJ relied on Plaintiff's own waiver requests submitted in September, 2005, March 2006, and November, 2008. (Tr. 344-46). The ALJ also noted, "[t]he fact that it took several years to process her waiver request does not change the fact that she was notified that she would continue to receive benefits until her request was adjudicated." (Tr. 346).

Plaintiff's own testimony also supports the ALJ's finding. At her hearing, Plaintiff testified that she knew SSA would stop her benefits if she started working: "Q: And you're aware of that, yet you're working; you already know that Social Security has contacted you and said, hey, we're going to stop your benefits because you're working. A: And they did, and then they restarted

---

[2] Plaintiff also argues that "SSA has not proven, nor can it prove, that [Plaintiff] failed to report her work in 2003." ECF 18-2 at 21. However, as the ALJ made clear, Plaintiff's reporting of her work is not at issue in this case. (Tr. 344-45). The ALJ stated, "whether or not [Plaintiff] informed the [SSA in 2003] is not important to this case because . . . [i]n March 2005, the claimant filled out and returned a form regarding her work activity." (Tr. 344). Accordingly, I will only address whether Plaintiff accepted payments which she either knew or could have been expected to know were incorrect.

3

again." (Tr. 491). When the ALJ asked Plaintiff why she was continuing to accept the benefits while she was working, Plaintiff responded that the SSA's letters were confusing:

> Q: They give you a definition, they tell you how much it is a month, and you're making over that a month, so what's your thinking at that point?
>
> A: Well, I would notify them, again, respond to that, and tell them the amount, again, reiterate what I was making, and then I would get future letters saying due to your work we're increasing your benefits, and that was totally confusing to me.

(Tr. 478). However, the record does not reflect that Plaintiff ever received a letter stating that her benefits were being increased "due to [her] work," as Plaintiff has alleged. Instead, the record shows that the Plaintiff received the following information regarding benefit increases: a November 16, 2005, Determination of Benefit Adjustment, stating that the SSA had used a benefit increase for 2005 to reduce her overpayment amount, (Tr. 231-32); a November 23, 2008 letter from the SSA stating that the SSA "raised the monthly benefit beginning January 2008 to correct [her] benefit amount," (Tr. 138); and a December, 2008 letter from the SSA stating that Plaintiff's "benefits will increase by 5.8 percent in 2009 because of a rise in the cost of living," (Tr. 219). The record also includes another letter from the SSA, dated September 20, 2005, indicating the SSA's receipt of Plaintiff's waiver request, and that Plaintiff would continue to "receive benefits as follows until [the SSA] respond[s] to [her] request." (Tr. 69-70). As the ALJ pointed out, this information sent by the SSA is not inconsistent with the fact that Plaintiff was not, ultimately, entitled to the benefits, and that she could have been expected to know that acceptance of the continued payments was incorrect. (Tr. 346).

Plaintiff's assertion that the overpayments were solely the error of the SSA is equally unavailing. Plaintiff argues that, because "SSA controlled all of the events in this case . . . SSA cannot . . . turn the tables and hold the beneficiary liable for benefits paid in error by SSA years earlier." ECF 18-2 at 34. In fact, the SSA regulations state that the SSA can do just that: "If the final decision of the Commissioner affirms the determination that you are not entitled to benefits, you will be asked to pay back any continued benefits you receive." 20 C.F.R. § 404.1597a(j)(i). Furthermore, as noted above, even when the Agency has some culpability in the overpayment, an assessment of fault applies only to the overpaid individual, and the fact that the SSA clearly bears blame for sending confusing and contradictory correspondence in this case is not dispositive as to whether there is fault on the part of the Plaintiff. *See* 20 C.F.R. § 404.507. Here, the ALJ's finding of fault by the Plaintiff was supported by Plaintiff's own testimony and her September 2005, March 2006, and November, 2008 waiver submissions. (Tr. 344-46).

Moreover, Plaintiff's visits and letters to the SSA indicate that she could have been expected to know that she was not entitled to the benefits she was receiving. For example, Plaintiff testified that, after receiving the July 7, 2005, letter terminating her benefits, she went into her local field office, "showed them the notice . . . and [she] was really told nothing at that point, that [she] would be notified later on of something." (Tr. 485). The letter itself states, "we will decide that your disability ended because of substantial work . . . and that you are not entitled to payments for: May 2004 through July 2004, September 2004 through June 2005." (Tr. 50). This letter, coupled with Plaintiff's testimony, support the ALJ's finding that Plaintiff could have been expected to know that she was not entitled to the overpayments. (Tr. 346). There is no evidence in the record that the SSA told her that she was *entitled* to those benefits. Instead, Plaintiff received

4

notice of her continued benefits, consistent with the SSA's stated intentions pending its waiver decision. (Tr. 69-70). Plaintiff continued to assume that she was entitled to the benefits, because the SSA continued to send them. In any event, the function of this Court is not to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Because the ALJ supported his decision with substantial evidence, I must affirm.

Finally, the ALJ also properly considered Plaintiff's mental abilities. He stated that a review of Plaintiff's substantial gainful activity, her work activity report to SSA, "her numerous waiver requests, and every other form she filed in this case indicate[d] that [she] had sufficient mental capability to fill out and respond to the [SSA's] questions and to deal with the [SSA]." (Tr. 346). Plaintiff concedes that this case is not about mental capacity, but suggests her depression contributed to her confusion regarding her interactions with the SSA. ECF 18-2 at 32. However, the ALJ's analysis provides a thorough consideration, in accordance with SSA regulations, of "all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations" the individual might have, when determining Plaintiff's fault. *See* 20 C.F.R. § 404.507.

In sum, Plaintiff received notice from the SSA that her "disability ended because of substantial work," (Tr. 50), and, after submitting her waiver request, that she would continue to receive benefits "until [the SSA] respond[ed] to [her] request." (Tr. 69). The ALJ properly considered these notices, along with subsequent communication from the SSA and Plaintiff's own testimony, to find that Plaintiff was not without fault in accepting the overpayments for the periods of October, 2005, through June, 2006, and October, 2006, through December, 2008. Accordingly, I find that the ALJ's decision denying a waiver of $26,692.70 of Plaintiff's overpayment of benefits is supported by substantial evidence.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF 18), is DENIED and Defendant's Motion for Summary Judgment (ECF 23) is GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                        Sincerely yours,

                                        /s/

                                        Stephanie A. Gallagher
                                        United States Magistrate Judge